IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ALINA BOYDEN and
SHANNON ANDREWS,

      Plaintiffs,

    v.                            Case No. 17-CV-264

STATE OF WISCONSIN
DEPARTMENT OF EMPLOYEE
TRUST FUNDS, et al.,

      Defendants.

---

**STATE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR RULE 12(B)(1) AND (6) MOTION TO DISMISS AND,
ALTERNATIVELY, THEIR MOTION TO STAY**

---

BRAD D. SCHIMEL
Wisconsin Attorney General

STEVEN C. KILPATRICK
Assistant Attorney General
State Bar #1025452

COLIN T. ROTH
Assistant Attorney General
State Bar #1103985
Attorneys for State Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1792 (SCK)
(608) 264-6219 (CTR)
(608) 267-2223 (Fax)
kilpatricksc@doj.state.wi.us
rothct@doj.state.wi.us

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

FACTUAL BACKGROUND ......................................................................3

LEGAL STANDARD................................................................................5

ARGUMENT .............................................................................................6

I.    Plaintiffs' claims against all State Defendants except GIB
      must be dismissed for lack of Article III standing. .......................6

      A.    Plaintiffs' alleged injuries are not fairly traceable to a
            decision by any State Defendant except GIB. ......................7

      B.    Plaintiffs' alleged injuries are not redressable by any
            State Defendant except GIB...................................................9

II.   Plaintiffs' equal protection claims under 42 U.S.C. § 1983
      against Defendants Conlin, Cross, Blank, and Golden must
      be dismissed. ............................................................................... 11

      A.    The individual State Defendants in their individual
            capacities   must   be   dismissed   because   they   lack
            personal    involvement    in    Plaintiffs'    alleged
            constitutional injuries........................................................ 11

      B.    The individual State Defendants in their official
            capacities   must   be   dismissed   because   Eleventh
            Amendment immunity bars Plaintiffs' Section 1983
            claims against them............................................................ 12

III.  Plaintiffs' Title VII claims against Defendants Board of
      Regents, School of Medicine, ETF, and GIB must be
      dismissed. ................................................................................... 15

      A.    The School of Medicine must be dismissed because it
            is not a suable entity.......................................................... 16

      B.    The Board of Regents and ETF must be dismissed
            because   they   did   not   intentionally   discriminate
            against Plaintiffs................................................................ 18

      C.     Defendants ETF and GIB must be dismissed because neither are Plaintiffs' "employer." ...................................... 19

      D.     Plaintiffs cannot obtain punitive damages for their Title VII claims. ................................................. 22

IV.   Plaintiffs' ACA claims must be dismissed, or, alternatively, should be stayed........................................................... 22

      A.     Plaintiffs' ACA claim against GIB must be dismissed because they fail to allege facts showing that GIB is a "covered entity." ................................................. 23

      B.     Alternatively, Plaintiffs' ACA claims should be stayed until the Northern District of Texas issues a final order regarding the HHS regulations at issue here. ......... 26

CONCLUSION ................................................................. 30

## INTRODUCTION

Two employees of the University of Wisconsin System challenge terms of their health insurance plans that exclude coverage for health services related to gender reassignment. They allege that these exclusions improperly discriminate against them on the basis of their sex and gender identity under three federal civil rights laws—the 14th Amendment's Equal Protection Clause via Section 1983, Title VII, and the Patient Protection and Affordable Care Act (ACA). But, leaving aside these claims' merits, the plaintiffs' complaint pleads the wrong claims against the wrong state entities and officials and must be dismissed.

In short, the plaintiffs sue state entities and officials that have nothing to do with the challenged coverage exclusion. Under Wisconsin law, only the State of Wisconsin Group Insurance Board (GIB) can set the terms of state employees' health insurance plans. And the plaintiffs themselves only allege that GIB made the decision to insert the coverage exclusion about which they complain. Yet the plaintiffs sue state entities that had nothing to do with that decision, including the Wisconsin Department of Employee Trust Funds (ETF), the Board of Regents of the University of Wisconsin System ("Board of Regents"), and the University of Wisconsin School of Medicine and Public Health ("School of Medicine"). And the plaintiffs sue state officials who also had nothing to do with that decision, including the ETF Secretary, the

President of the University of Wisconsin System, the UW-Madison Chancellor, and the School of Medicine Dean.[1]

These holes in the plaintiffs' allegations require dismissal of all state-affiliated defendants and claims. The plaintiffs lack Article III standing to assert their claims against all state entities and officials except GIB, since those defendants neither caused nor can redress the plaintiffs' alleged injuries. Likewise, the plaintiffs' Section 1983 claims against state officials fail because those officials had insufficient involvement in the alleged constitutional violations, both in their individual and official capacities. As for Title VII, neither the Board of Regents nor ETF engaged in any alleged intentionally discriminatory conduct.

The plaintiffs' claims under Title VII and the ACA should be dismissed for other reasons, too. The School of Medicine is not a suable entity and thus cannot be subjected to a Title VII claim. Neither ETF nor GIB employ the plaintiffs; they too are improper Title VII defendants. And Plaintiffs cannot obtain punitive damages against the State Defendants under Title VII. As for the ACA, the plaintiffs do not allege that GIB receives federal financial assistance, a required element of any ACA claim. And if the plaintiffs' ACA claim is not dismissed, it should be stayed because the Northern District of

---

[1] Collectively, these state entities and officials are the "State Defendants."

Texas has enjoined enforcement of the administrative regulations on which that claim relies.

## FACTUAL BACKGROUND

Plaintiffs Alina Boyden and Shannon Andrews are transgender women, meaning they were assigned male genders at birth but identify as female. (Compl. ¶¶ 7, 10–11, 30.) Both women are employed by the Board of Regents of the University of Wisconsin System and both receive health insurance through their state employment. (Compl. ¶¶ 7, 18–19.) They suffer from "gender dysphoria," a medical condition that involves distress resulting from the feeling of incongruence between one's gender identity and one's sex assigned at birth. (Compl. ¶ 32.) Boyden and Andrews have been prescribed medical treatment for gender dysphoria that their health care providers have deemed medically necessary. (Compl. ¶ 42.)

Defendant GIB sets the terms of state employees' health insurance and oversees the administration of state employees' group health insurance plans. (Compl. ¶ 21.) Those plans now exclude coverage for "procedures, services, and supplies related to surgery and sex hormones associated with gender reassignment." (Compl. ¶¶ 8, 21.) In mid-July 2016, GIB amended the state insurance plan to begin providing coverage for gender reassignment care beginning in January 2017. (Compl. ¶ 38.) But on January 30, 2017, the GIB revoked that coverage, effective February 1, 2017. (Compl. ¶ 41.)

Plaintiff Boyden is a graduate student and teaching assistant in the Department of Anthropology in the College of Letters and Science at the University of Wisconsin–Madison. She is eligible for health insurance coverage. Boyden was diagnosed with gender identity disorder but she has not undergone treatment for it. (Compl. ¶¶ 10, 42–44, 47.) Boyden's health insurance administrator, Dean Health Plan, which offers insurance plans to Wisconsin state employees, denied her coverage for sex reassignment surgery due to the coverage exclusion. (Compl. ¶¶ 28, 57.) Boyden filed a sex discrimination complaint with the EEOC in December 2015 against the University of Wisconsin-Madison. (Compl. ¶ 46.) On March 31, 2017, she requested a right-to-sue letter from the EEOC. (Compl. ¶ 58.)

Plaintiff Andrews works at the University of Wisconsin School of Medicine and Public Health ("School of Medicine"). Dr. Andrews suffers from gender dysphoria and has received treatment for it. (Compl. ¶ 68.) In October 2015, she underwent genital reconstruction surgery. (Compl. ¶ 71.) She has paid out-of-pocket to obtain this care. (Compl. ¶¶ 11, 42, 72.) In February 2016, Andrews filed a claim with Wisconsin Physicians Service Insurance Corporation (WPS), a health insurance administrator that also offers insurance plans to Wisconsin state employees. That claim was also denied due to the plan's coverage exclusion for gender reassignment procedures. (Compl. ¶¶ 29, 73–79.) Andrews filed a complaint against ETF and GIB with the EEOC

4

in July 2016. On March 31, 2017, she requested a right-to-sue letter from the EEOC. (Compl. ¶ 81.)

The other state-affiliated defendants have only a tangential relationship to Plaintiffs' health care. Robert J. Conlin is the Secretary of ETF and exercises the administrative powers and duties of the department. (Compl. ¶ 22.) The Board of Regents is responsible for the governance of the University of Wisconsin System. (Compl. ¶ 23.) Raymond W. Cross is President of the University of Wisconsin System. (Compl. ¶ 24.) Rebecca M. Blank is Chancellor of the University of Wisconsin-Madison. (Compl. ¶ 25.) Robert N. Golden, M.D. is Dean of the School of Medicine. (Compl. ¶ 27.) And the School of Medicine is a school within the UW System. (Compl. ¶ 26.) The Complaint does not allege that any of these defendants have a role in setting the terms of health insurance plans for State employees.

## LEGAL STANDARD

"When reviewing a dismissal for lack of subject matter jurisdiction . . . a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). "[A] plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

To survive a Rule 12(b)(6) challenge, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Facial plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, a complaint cannot simply contain "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* "[I]t demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

## ARGUMENT

### I.     Plaintiffs' claims against all State Defendants except GIB must be dismissed for lack of Article III standing.

"The jurisdiction of federal courts is limited to 'Cases' and 'Controversies' as described in Article III, Section 2 of the Constitution. There is no case or controversy if the plaintiff lacks standing to challenge the defendant's alleged misconduct." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587–88 (7th Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To confer standing a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). As the party invoking federal

jurisdiction, Plaintiffs have the burden to establish Article III standing. *Lujan*, 504 U.S. at 561.

Two critical components of Article III standing are absent from Plaintiffs' claims against all State Defendants aside from GIB: causation and redressability. Plaintiffs allege that GIB made the insurance coverage decision about which they complain. None of the other State Defendants made the decision as a matter of fact, nor could they as a matter of law. Accordingly, Plaintiffs' claims—whether under Section 1983, Title VII, or the ACA—against all State Defendants except GIB fail for lack of standing.

### A. Plaintiffs' alleged injuries are not fairly traceable to a decision by any State Defendant except GIB.

Plaintiffs' core allegation in this case is that their health insurance plans improperly exclude coverage for gender reassignment-related treatments. (*See, e.g.*, Compl. ¶ 9.) Regardless of whether this allegation states a substantive claim under Section 1983, Title VII, or the ACA, Plaintiffs must clear the threshold standing hurdle. Article III standing first requires that a particular defendant caused the coverage exclusion about which Plaintiffs complain. But Plaintiffs' own allegations undermine their standing against all State Defendants except GIB.

Plaintiffs allege that GIB, not any other State Defendant, made the key decision about which they complain: "[O]n December 30, 2016, . . . GIB took

action to reinstate the exclusion of health benefits and services related to gender reassignment" and "reinstated the ban effective February 1, 2017." (Compl. ¶¶ 40–41.) And Plaintiffs further allege that, "as a result" of that decision, they "have been denied coverage for medically necessary treatments for gender dysphoria." (Compl. ¶ 42.)

Absent from the complaint is any allegation that any other State Defendant made a decision that contributed to Plaintiffs' coverage denials. As for ETF, although Plaintiffs ambiguously allege that "ETF/GIB" took certain actions, Plaintiffs acknowledge that these are two separate entities (Compl. ¶¶ 20–21) and only allege that one of them—GIB—actually decided to exclude coverage for gender reassignment procedures (Compl. ¶¶ 40–41). Plaintiffs' asserted injury—the denial of coverage—thus was not traceable to ETF.

Likewise, Plaintiffs do not allege that the Board of Regents did anything aside from generally being "responsible for governance of the University of Wisconsin System." (Compl. ¶ 23.) While the Board of Regents employs Plaintiffs (Compl. ¶ 19), it did not make any alleged decision regarding the health insurance terms that Plaintiffs allege are discriminatory. The same goes for the School of Medicine, which employs Andrews but, according to the Complaint, did nothing else. (Compl. ¶¶ 19, 26.)

The State Defendants who are State officials—Conlin, Blank, Cross, and Golden—also took no alleged action regarding Plaintiffs' health insurance

8

coverage. Plaintiffs vaguely allege only that these officials had unspecified administrative powers and duties, not that they made any relevant health insurance decisions. (Compl. ¶¶ 22, 24–25, 27.)

None of these allegations show that Plaintiffs' alleged injury is fairly traceable to any State Defendant except GIB, and so those State Defendants must be dismissed for lack of standing.

**B.      Plaintiffs' alleged injuries are not redressable by any State Defendant except GIB.**

Even if Plaintiffs had alleged that a State Defendant other than GIB caused their injuries, Plaintiffs also lack standing because none of those defendants can redress Plaintiffs' injuries.

Wisconsin law assigns to GIB, not any other State Defendant, the power to set "the terms and conditions of the insurance contract[s]" governing the Plaintiffs' group insurance plans, which includes the coverage exclusions that Plaintiffs challenge here. *See* Wis. Stat. § 40.03(6)(d)5. Other statutory provisions further show that GIB sets the terms of state employees' health insurance plans, not any of the other State Defendants. *See, e.g.*, Wis. Stat. §§ 40.03(6)(a), (b), and (d), 40.51(6), 40.52. Likewise, health insurance plans offered to state employees must adhere to the terms set by GIB. *See* Wis. Stat. § 40.52(1). Though Plaintiffs do allege that ETF "determines the requirements

9

for health insurance plans offered to state employees" (Compl. ¶ 20), these statutory provisions show why that allegation fails as a matter of law.

So, even if Plaintiffs can plead a substantive violation of the Equal Protection Clause, Title VII, or the ACA, none of the State Defendants except GIB have any power to alter the coverage exclusion about which Plaintiffs complain. Those Defendants are the wrong defendants for such a claim. *Cf. Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (redressability lacking since "a state official cannot be enjoined to act in any way that is beyond his authority to act in the first place"); *Bronson v. Swensen*, 500 F.3d 1099, 1111 (10th Cir. 2007) ("The redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute.").

Since the State Defendants aside from GIB have no power to redress Plaintiffs' alleged injuries, Plaintiffs claims against those defendants must be dismissed for lack of standing.

## II. Plaintiffs' equal protection claims under 42 U.S.C. § 1983 against Defendants Conlin, Cross, Blank, and Golden must be dismissed.

### A. The individual State Defendants in their individual capacities must be dismissed because they lack personal involvement in Plaintiffs' alleged constitutional injuries.

The Court need not reach the merits of Plaintiffs' equal protection claims under Section 1983 because they fail as a matter of law due to the individual State Defendants' lack of personal involvement. A plaintiff may only state a Section 1983 claim against individuals who were personally involved in the alleged constitutional deprivations. *Vinning–El v. Evans,* 657 F.3d 591, 592 (7th Cir. 2011). "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

None of Plaintiffs' allegations concerning the individual State Defendants reveal any personal involvement in any alleged constitutional deprivation. Nowhere do Plaintiffs allege that these defendants took any specific actions regarding health insurance coverage that violated Plaintiffs' constitutional rights. Again, Plaintiffs' vague allegations that these defendants have general administrative authority do nothing to explain how the individual defendants personally caused or participated in any constitutional violation. (Compl. ¶¶ 22, 24, 25, 27.) And though Plaintiffs' do allege that Conlin, Blank, Cross, and Golden violated their constitutional rights, such

conclusory "the-defendant-harmed-me" allegations do not suffice to state a claim. *Iqbal,* 556 U.S. at 678.

Given the absence of alleged personal involvement by Conlin, Blank, Cross, or Golden in any equal protection violation, Plaintiffs' Section 1983 claims against those Defendants in their individual capacities must be dismissed.

### B. The individual State Defendants in their official capacities must be dismissed because Eleventh Amendment immunity bars Plaintiffs' Section 1983 claims against them.

Plaintiffs also fail to state a claim against Conlin, Cross, Blank, and Golden in their official capacities. Although these defendants in their official capacities are "persons" under Section 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989), the Eleventh Amendment[2] still bars suit against them unless the *Ex parte Young* exception is met. This exception is not met here.

The Eleventh Amendment bars suits against a state brought by private parties, whether the relief sought is money damages or an injunction. *See Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984) (this jurisdictional bar applies

---

[2] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI.

"regardless of the nature of the relief sought"). And "[s]uits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

*Ex parte Young* is a judicially recognized exception to Eleventh Amendment immunity that allows an action for prospective injunctive relief by a private citizen against a state officer whose acts violate federal law. 209 U.S. 123, 159–60 (1908). A court applying the *Ex parte Young* doctrine "need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Ind. Prot. & Advocacy Servs. v. Ind. Family and Social Serv. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002)). "To take advantage of *Young* the plaintiffs must sue the particular public official whose acts violate federal law." *David B. v. McDonald,* 156 F.3d 780, 783 (7th Cir. 1998).

Here, Plaintiffs seek prospective injunctive relief against all the individual defendants in their official capacities.[3] (Compl. ¶¶ 22 (Conlin), 24 (Cross), 25 (Blank).) However, the relief Plaintiffs seek—"relief from

---

[3] The State Defendants note that Plaintiffs do not expressly allege that they sue Golden for injunctive relief. (Compl. ¶ 27.) However, Plaintiffs seek injunctive relief in the two causes of action against him and the other individual defendants. (Compl. ¶¶ 88 and 93.) Thus, the State Defendants consider Plaintiffs to seek prospective injunctive relief against all the individual defendants in their official capacities.

Defendants' discriminatory exclusion of coverage for transition-related care"—
overlooks that these officials did not decide to exclude coverage for gender
reassignment-related care. That is, the individual defendants in their official
capacities have no authority over the coverage exclusions in Plaintiffs' health
insurance plans.

Defendant Conlin is the Secretary of the Wisconsin Department of
Employee Trust Funds (ETF). In that capacity, he exercises ETF's
administrative powers and duties. (Compl. ¶ 22.) Again, Plaintiffs do allege
that ETF "determines the requirements for health insurance plans offered to
state employees." (Compl. ¶ 20.) Conlin might be a proper defendant if this
were true, but it is not. GIB sets the terms of state employees' health insurance
plans, not ETF. *See* Wis. Stat. §§ 40.03(6)(a), (b), and (d), 40.51(6), 40.52. Since
ETF has no power to create the coverage exclusions about which Plaintiffs
complain, Conlin, in his official capacity, has not violated Plaintiffs'
constitutional rights.

The same is true for the President of the University of Wisconsin System
(Defendant Cross), the UW-Madison Chancellor (Defendant Blank), and the
School of Medicine Dean (Defendant Golden). Plaintiffs simply allege these
defendants had vague administrative powers and duties. (Compl. ¶¶ 24–25,

27). But, like the ETF Secretary, none of the officials have the power to set the terms of state employees' health insurance plans.[4]

In sum, Plaintiffs do not allege that the offices of Conlin, Cross, Blank, and Golden have any authority to deny health insurance coverage for gender reassignment-related care. Plaintiffs' complaint thus lacks sufficient allegations that the individual State Defendants in their official capacities are violating Plaintiffs' constitutional rights. Plaintiffs' Section 1983 official capacity claims against Conlin, Cross, Blank and Golden do not meet the *Ex parte Young* exception to the Eleventh Amendment and must be dismissed. *See Ind. Prot. & Advocacy Servs.*, 603 F.3d at 370.

## III. Plaintiffs' Title VII claims against Defendants Board of Regents, School of Medicine, ETF, and GIB must be dismissed.

Plaintiffs bring Title VII discrimination claims the Board of Regents, School of Medicine, ETF, and GIB. (Compl. ¶¶ 94–103.) Aside from the standing problems discussed above, these claims fail for four other reasons. First, Plaintiffs' claim against the School of Medicine fails because this defendant is not a legal, suable entity. Second, the Board of Regents (Plaintiffs'

---

[4] By suing Blank and Golden, Plaintiffs reveal the defect in their theory that they can sue any state official involved in administering GIB's decisions. Blank has administrative authority, subject to Cross's direction. (Compl. ¶ 25.) Similarly, Golden has administrative authority, subject to Blank's and Cross's direction. (Compl. ¶ 27.) Taking Plaintiffs' reasoning to its logical conclusion, they could have named any university employee involved in administering employee health benefits in any way, such as lower-level HR staff. That cannot be correct.

direct employer) and ETF cannot be liable for sex discrimination because they did not intentionally choose the health insurance coverage exclusion at issue. Third, their claim fails against ETF and GIB because these state entities are not Plaintiffs' "employers" under Title VII. Lastly, even if the Title VII claims survive dismissal, Plaintiffs cannot obtain punitive damages against the State Defendants.

### A. The School of Medicine must be dismissed because it is not a suable entity.

Plaintiffs assert a Title VII claim against the School of Medicine, but that defendant is not a suable entity and thus must be dismissed. State law determines if this Defendant is suable in federal court. *See* Fed. R. Civ. P. 17(b);[5] *Busby v. Electric Utils. Employees Union*, 323 U.S. 72, 73 (1944) (*per curiam*). Under Wisconsin law, "a cause of action accrues where there exists a claim capable of present enforcement, *a suable party against whom it may be enforced*, and a party who has a present right to enforce it." *Employers Ins. of Wausau v. Smith,* 154 Wis. 2d 199, 231, 453 N.W.2d 856 (1990) (emphasis added).

---

[5] Federal Rule of Civil Procedure 17 reads, in pertinent part:
> **(b) Capacity to Sue or Be Sued.** Capacity to sue or be sued is determined as follows:
>> **(1)** for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
>> **(2)** for a corporation, by the law under which it was organized; and
>> **(3)** for all other parties, by the law of the state where the court is located.

Courts have routinely held that the university institutions belonging to the University of Wisconsin System are not suable entities under Wisconsin statutes. *See Derby v. University of Wisconsin*, 54 F.R.D. 599, 600 (E.D. Wis. 1972), *aff'd*, 489 F.2d 757 (7th Cir. 1973) ("the action may not be maintained against the University of Wisconsin or the University of Wisconsin-Parkside since they are not natural or corporate persons"); *Tadder v. Univ. of Wisconsin-Rock Cty.*, No. 13-CV-105-WMC, 2013 WL 3943498, at *2 (W.D. Wis. July 30, 2013) ("Defendants first contend that UW–Rock County is not competent to sue and be sued under Wisconsin law. They are correct."); *Alawiye v. University of Wisconsin-Madison*, No. 06-C-233-S, 2006 WL 1941999, *1 (W.D. Wis. July 11, 2006) ("University of Wisconsin-Madison is not a suable entity"). Here, the School of Medicine is a school within the University of Wisconsin System and falls squarely within this general rule.[6] (Compl. ¶ 26.)

Because the Wisconsin Legislature did not confer suable status on the School of Medicine, it is not a legal suable entity and should be dismissed. *See Whiting v. Marathon Cty. Sheriff's Dep't,* 382 F.3d 700, 704 (7th Cir. 2004).

---

[6] Of course, that does not mean no University of Wisconsin entities can be sued—indeed, Wisconsin statutes designate the "Board of Regents of the University of Wisconsin System" as the entity capable of being sued. *See* Wis. Stat. § 36.07.

**B.     The Board of Regents and ETF must be dismissed because they did not intentionally discriminate against Plaintiffs.**

As for Plaintiffs' Title VII claims against ETF and the Board of Regents, those claims fail because Plaintiffs do not allege that those defendants intentionally discriminated against them. To state a claim under Title VII, Plaintiffs must allege that intentional discrimination by ETF and the Board of Regents played a part in an employment outcome. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2033 (2015) (42 U.S.C. § 2000e-2(a)(1) prohibits certain motives); *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 669–70 (7th Cir. 1996) (under Title VII a plaintiff must "prove that he has been the victim of intentional discrimination").

As discussed in Section I above, Plaintiffs' complaint lacks any allegation that either ETF or the Board of Regents took any intentionally discriminatory action against them. Again, GIB controls the content of state employees' health insurance plans, not ETF or the Board of Regents. *See* Wis. Stat. § 40.01(2), 40.03(6), 40.52. Aside from a generic allegation that the Board of Regents is "responsible for governance of the University of Wisconsin System," Plaintiffs allege no facts whatsoever about the Board of Regents. (Compl. ¶ 23.) And Plaintiffs' allegation that ETF generally sets health insurance coverage is wrong as a matter of law. (Compl. ¶ 20.)

Since Plaintiffs do not allege that ETF or the Board of Regents made any decision regarding their healthcare coverage, let alone an intentionally discriminatory one, their Title VII claims against ETF and the Board of Regents must be dismissed.

### C.   Defendants ETF and GIB must be dismissed because neither are Plaintiffs' "employer."

As for Plaintiffs' Title VII claims against ETF and GIB, those claims also fail because neither entity employed Plaintiffs for purposes of Title VII liability.

Title VII prohibits "an employer . . . [from] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person[.]" 42 U.S.C. § 2000e(b). "Person" can include governmental agencies, and "employee" means "an individual employed by an employer." 42 U.S.C. §§ 2000e(a), (f).

While Title VII does permit an employee to sue her own employer for sex discrimination, it does not permit an employee to sue an entity which does not employ her. *See, e.g.*, *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1011 (7th Cir. 2004) (noting that defendants who do not employ a Title VII plaintiff

"cannot, of course, be liable under that statute"). Indeed, "[i]t is only the employee's employer who may be held liable under Title VII." *Robinson v. Sappington,* 351 F.3d 317, 332 n.9 (7th Cir. 2003). Only the Board of Regents employs Plaintiffs.[7] Since neither GIB nor ETF employs Plaintiffs, they cannot be subject to Title VII liability.

Plaintiffs attempt to evade this roadblock by alleging that ETF and GIB are "agents" of the Board of Regents. (Compl. ¶ 96.) That allegation is wrong and cannot save their Title VII claims against these state entities.

Although the Seventh Circuit has suggested that a plaintiff may maintain a Title VII claim "against an entity acting as an agent of the employer," the court cautioned that this is a narrow exception that applies only "under certain circumstances." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 668– 69 (7th Cir. 2013). Agency liability under Title VII has been recognized only where the agent "exercise[s] control over an important aspect of [the plaintiff's] employment, where the agent 'significantly affects access of any individual to employment opportunities', or where 'an employer delegates sufficient control

---

[7] While Plaintiffs allege that the University of Wisconsin System is their employer, (*see* Compl. ¶ 7), Defendant Board of Regents is properly considered Plaintiffs' "employer" for Title VII purposes because this body "governs the schools and programs within the university." *Rounds-Rheaume v. Univ. of Wis. State Lab. of Hygiene*, No. 16-CV-146-JDP, 2016 WL 3951228, at *2 (W.D. Wis. July 20, 2016) (citing Wis. Stat. § 36.09).

of some traditional rights over employees to a third party.'" *Id.* (alteration in original) (citations omitted).

Here, Plaintiffs' complaint alleges no employment relationship between the Board and ETF and GIB at all. There are no allegations that ETF or GIB have any degree of control over any aspects of Plaintiffs' employment for the Board of Regents. To the extent Plaintiffs may argue that ETF and GIB "control" a lone aspect of their employment with the Board of Regents—the health plan and its coverage terms—no legal precedent exists for such a broad reading of "agent." Indeed, under Plaintiffs' theory, ETF and GIB would be liable "employers" under Title VII as to every state employee. This Court rejected a similar Title VII agency theory argument in *Klassy v. Physicians Plus Ins. Co.*, 276 F. Supp. 2d 952, 959–60 (W.D. Wis. 2003) *aff'd,* 371 F.3d 952 (7th Cir. 2004) ("[I]f plaintiffs' theory is correct, for purposes of Title VII, defendant Physicians Plus 'employs' every employee of every company that contracts with Physicians Plus to provide health care coverage for its workers. In the absence of some clear indication in the statute, I am reluctant to infer that Congress intended to impose such potentially wide-ranging liability on insurers.").

Plaintiffs' Title VII "agency" theory fails. ETF and GIB are not "employers" of Plaintiffs. Therefore, these State Defendants must be dismissed from Plaintiffs' Title VII claim.

21

### D.   Plaintiffs cannot obtain punitive damages for their Title VII claims.

Plaintiffs seek punitive damages for their Title VII claims. (Compl. Request for Relief ¶ D.) But Plaintiffs cannot obtain this remedy against the Board of Regents, School of Medicine, ETF, or GIB, even if their Title VII claims against those defendants are not dismissed. Title VII only allows punitive damages against a defendant "other than a government, government agency or political subdivision." 42 U.S.C. § 1981a(b)(1). This requires the dismissal of requests for punitive damages against government entities. *See Passanati v. Cook County*, 689 F.3d 655, 677 (7th Cir. 2012) (holding that a plaintiff's government employer "cannot be held liable for punitive damages"). Since Board of Regents, School of Medicine, ETF, and GIB all are state government entities, Title VII prohibits Plaintiffs from recovering punitive damages against those defendants. This request for relief must be dismissed.

## IV.   Plaintiffs' ACA claims must be dismissed, or, alternatively, should be stayed.

Plaintiffs also assert claims against ETF and GIB under Section 1557 of the ACA, codified at 42 U.S.C. § 18116(a). The ACA claim against GIB must be dismissed because Plaintiffs fail to allege that GIB receives federal funds and is thus subject to Section 1557.[8] If Plaintiffs' ACA claims are not dismissed,

---

[8] As explained in Section I above, Plaintiffs' ACA claim against ETF fails for lack of Article III standing.

they should be stayed due to a preliminary injunction entered by the Northern District of Texas against the administrative regulations on which Plaintiffs' claims rely.

### A. Plaintiffs' ACA claim against GIB must be dismissed because they fail to allege facts showing that GIB is a "covered entity."

Section 1557 of the ACA provides that "an individual shall not . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance." 42 U.S.C. § 18116(a). Likewise, regulations implementing Section 1557 apply only to "covered entities," defined as those that "operate[] a health program or activity, any part of which receives Federal financial assistance." 45 C.F.R. §§ 92.4, 92.207. Under both authorities, only entities receiving federal financial assistance are subject to the substantive anti-discrimination provisions of Section 1557 and its implementing regulations.

This limitation is crucial, since it provides the purported source of Congress's power to enact Section 1557—the Spending Clause. *Cf. Cherry v. Univ. of Wis. Sys. Bd. of Regents*, 265 F.3d 541, 553 (7th Cir. 2001) ("Congress enacted Title IX pursuant to its authority under the Spending Clause."); *Guardians Ass'n v. Civil Serv. Comm'n of City of N.Y.*, 463 U.S. 582, 598 (1983) ("Title VI is spending-power legislation."). Under the Spending Clause,

23

Congress can only induce states to comply with statutory anti-discrimination conditions and waive Eleventh Amendment immunity from suit in exchange for federal funds. *See Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640 (1999) ("When Congress acts pursuant to its spending power, it generates legislation 'much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions.'") (quoting *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).

Decisions under similar civil rights statutes show that failing to allege the receipt of federal funding is fatal.[9] For instance, "[t]o state a claim under § 504 of the Rehabilitation Act, a plaintiff must allege that she was 'subjected to discrimination under [a] program or activity receiving Federal financial assistance.'" *Cramlet v. Supreme Ct. of Wis.*, No. 12-CV-290-WMC, 2013 WL 5914401, at *5 (W.D. Wis. Nov. 1, 2013) (citing 29 U.S.C. § 794(a)) (alteration in original). Omitting such an allegation merits dismissal of Rehabilitation Act claims. *See e.g. Winfrey v. City of Chicago*, 957 F. Supp. 1014, 1024 (N.D. Ill. 1997) (dismissing claim because plaintiff did not allege that the specific government entity that allegedly discriminated received federal financial assistance). The same is true for Title VI claims. *See, e.g., Kelly v. Rice*,

---

[9] The important difference between stating an Americans with Disabilities Act claim versus a Rehabilitation Act claim is the requirement that Rehabilitation Act claims must allege receipt of federal funds. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).

375 F. Supp. 2d 203, 208–09 (S.D.N.Y. 2005) (dismissing Title VI claim where the plaintiff did not allege that the defendant received federal funds). A claim under Section 1557 of the ACA, a parallel civil rights statute, requires these same allegations.

To state a claim under Section 1557 against GIB, Plaintiffs must therefore allege that GIB receives federal funds. *See Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 852–53 (D.S.C. 2015) (examining whether defendant pharmacy received federal funds that could support ACA claim); *Richards v. Minnesota*, No. CV 13-3029-JRT/JSM, 2016 WL 818657, at *13 n.7 (D. Minn. Jan. 15, 2016) (same, regarding Minnesota Department of Corrections); *Rumble v. Fairview Health Servs.*, No. 14-CV-2037-SRN/FLN, 2015 WL 1197415, at *12–14 (D. Minn. Mar. 16, 2015) (same, regarding private healthcare organization).

Here, however, Plaintiffs do not allege that GIB operates a health program or activity that receives federal financial assistance. While Plaintiffs do allege that GIB is a "covered entity" (Compl. ¶ 108), that is not a factual allegation—it is merely a legal conclusion which this Court need not accept as true. *Iqbal,* 556 U.S. at 678. *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("a formulaic recitation of a cause of action's elements" is insufficient to avoid dismissal). Although Plaintiffs do reference an ETF memorandum opining that ETF is a "covered entity" because it receives

Medicare Part D subsidies—i.e. "federal financial assistance"—Plaintiffs do not allege any similar facts with respect to GIB. (Compl. ¶ 108 n.3.) This silence on an element of Plaintiffs' ACA claim against GIB is fatal and requires dismissal for failure to state a claim.

### B. Alternatively, Plaintiffs' ACA claims should be stayed until the Northern District of Texas issues a final order regarding the HHS regulations at issue here.

If this Court declines to dismiss Plaintiffs' ACA claims, it should stay those claims until a final order issues in *Franciscan Alliance, Inc. v. Price, et al.*, No. 7:16-cv-00108-O (N.D. Tex.), a case concerning the same U.S. Department of Health and Human Services (HHS) regulations that Plaintiffs rely on here. This Court has the "inherent power to stay cases before it" and "the discretion . . . to stay proceedings pending the resolution of other suits." *SanDisk Corp. v. Phison Elecs. Corp.*, 538 F. Supp. 2d 1060, 1065 (W.D. Wis. 2008) (citing *Landis v. N. American Co.*, 299 U.S. 248, 254–55 (1936)). Four factors are relevant to such a stay: "(1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court." *Hy Cite Corp. v. Regal Ware, Inc.*, No. 10-CV-168-WMC, 2010 WL 2079866, at *1 (W.D. Wis. May 19, 2010) (citation omitted).

These factors support staying Plaintiffs' ACA claim, since the *Franciscan Alliance* case will clarify at an early stage the basis of ACA claims for alleged gender identity discrimination. In *Franciscan Alliance*, the State of Wisconsin, along with seven more states and other private plaintiffs, obtained a preliminary injunction regarding the same gender identity discrimination regulations that Plaintiffs rely on here, 45 C.F.R. § 92.207 and § 92.4. (*See* Compl. ¶¶ 106–107.) The court held that HHS likely exceeded its authority under the Administrative Procedures Act when promulgating these gender identity regulations, since HHS's "expanded definition of sex discrimination exceeds the grounds incorporated by Section 1557 [of the ACA]." *Franciscan Alliance*, No. 7:16-cv-00108-O, __ F. Supp. 3d __, 2016 WL 7638311 at *17 (N.D. Tex. Dec. 31, 2016).

The Northern District of Texas thus granted a nationwide preliminary injunction against enforcing 45 C.F.R. § 92.207 and § 92.4 with respect to gender identity discrimination claims. *Id.* at *21–22. This injunction precludes Plaintiffs here from relying on these regulations, since "when a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989)). *See also Jordan v. Pugh*, No. 02-CV-01239-MSK-KLM,

2007 WL 2908931, at *4 (D. Colo. Oct. 4, 2007) ("When a court determines that a regulation is facially invalid, it is proper to enjoin all application and enforcement of the regulation."); *Heartwood, Inc. v. U.S. Forest Serv.*, 73 F. Supp. 2d 962, 977–78 (S.D. Ill. 1999) (granting nation-wide injunction, citing *Nat'l Mining Ass'n,* 145 F.3d at 1409), *aff'd*, 230 F.3d 947 (7th Cir. 2000).

Moreover, rather than oppose the plaintiffs' subsequent summary judgment motion, HHS said that it intends to "reevaluate the regulation" and conduct additional rulemaking proceedings. *Franciscan Alliance*, No. 7:16-cv-00108-O (Dkt. 92:1 (Defs.' Motion for Voluntary Remand and Stay).) Since HHS has indicated that it will not defend the regulations and will likely revise (or even eliminate them), the gender identity provisions in 45 C.F.R. § 92.207 and § 92.4 likely will soon disappear through either a final order by the *Franciscan Alliance* court or administrative action by HHS itself. Either outcome would undermine—perhaps fatally—Plaintiffs' ACA claim, which rests on these same regulations. (*See* Compl. ¶ 107.)

For similar reasons, a Minnesota district court recently stayed an ACA gender identity discrimination claim much like Plaintiffs' claims here. In *Rumble v. Fairview Health Services*, No. 14-cv-2037-SRN/FLN, 2017 WL 401940 (D. Minn. Jan. 30, 2017), the plaintiffs also asserted ACA gender identity claims based on 45 C.F.R. § 92.4. 2017 WL 401940, at *3. The court found that the *Franciscan Alliance* injunction applied nationwide to any party

28

seeking to enforce the enjoined HHS regulation. *Id.* at *4. This supported the court's decision to stay the plaintiff's ACA claims.[10]

This Court should stay Plaintiffs' ACA claims here, just as the *Rumble* court did. Not only will a final resolution in *Franciscan Alliance* determine whether and how Plaintiffs' ACA claims can proceed, but staying those claims will not unduly prejudice Plaintiffs. Other causes of action remain available to Plaintiffs, assuming they are properly pleaded.

---

[10] Although the *Rumble* court also relied on the Supreme Court's decision to grant certiorari in *Gloucester County School Board v. G.G.*, 822 F.3d 709 (4th Cir. 2016), *cert. granted*, 137 S. Ct. 369 (2016)—a Title IX gender identity case that the Supreme Court has since remanded to the Fourth Circuit—*Rumble*'s consideration of the *Franciscan Alliance* injunction still supports granting a stay here. The Supreme Court vacated the judgment without addressing the merits because, after the grant of certiorari, the U.S. Department of Education withdrew the Title IX guidance on which the Fourth Circuit's decision had relied. *See Gloucester Cty. Sch. Bd. v. G. G.*, 137 S. Ct. 1239 (2017) (mem. op.).

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' claims under 42 U.S.C. § 1983, 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 18116 with respect to all State Defendants. As for Plaintiffs' claims under 42 U.S.C. § 18116, if those claims are not dismissed, this Court should stay them until a final order issues in the pending *Franciscan Alliance* case.

Dated this 22nd day of June, 2017.

Respectfully submitted,

BRAD D. SCHIMEL
Wisconsin Attorney General

/s/Steven C. Kilpatrick
STEVEN C. KILPATRICK
Assistant Attorney General
State Bar #1025452

COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

Attorneys for State Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1792 (SCK)
(608) 264-6219 (CTR)
(608) 267-2223 (Fax)
kilpatricksc@doj.state.wi.us
rothct@doj.state.wi.us