IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ALINA BOYDEN and SHANNON
ANDREWS,

                     Plaintiffs,

   v.

ROBERT J. CONLIN, BOARD OF REGENTS
OF THE UNIVERSITY OF WISCONSIN
SYSTEM, RAYMOND W. CROSS, REBECCA
M. BLANK, UNIVERSITY OF WISCONSIN
SCHOOL OF MEDICINE AND PUBLIC HEALTH,
ROBERT N. GOLDEN, STATE OF WISCONSIN
DEPARTMENT OF EMPLOYEE TRUST FUNDS,
STATE OF WISCONSIN GROUP INSURANCE
BOARD, and DEAN HEALTH PLAN, INC.,

                     Defendants.

OPINION AND ORDER

17-cv-264-wmc

---

      In this civil action, plaintiffs Alina Boyden and Shannon Andrews assert Title VII equal protection and Affordable Care Act claims against defendants for the denial of healthcare coverage related to treatment for gender transition. Before the court is the motion of defendant Dean Health Plan, Inc., to dismiss plaintiff Alina Boyden's Title VII claim against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. #30.) Because Dean is neither Boyden's employer nor an agent of Boyden's employer under Title VII, the court will grant that motion.

## STATEMENT OF FACTS[1]

### A. Overview of the Relevant Parties

Plaintiff Alina Boyden is a transgender individual who was assigned male gender at birth, but identifies as female. As a result, Boyden suffers from gender dysphoria, "the medical diagnosis for the feeling of incongruence between one's gender identity and one's sex assigned at birth, and the resulting stress from that incongruence." (Am. Compl. (dkt. #27) ¶ 31.) Boyden is an employee of defendants University of Wisconsin-Madison and the Board of Regents of the University of Wisconsin System.

Defendant Dean Health Plan, Inc., is a health insurance administrator that offers insurance plans to Wisconsin state employees, including Boyden, through the Wisconsin Department of Employee Trust Funds ("ETF"). The State of Wisconsin Group Insurance Board ("GIB") "sets ETF policy" and "oversees the administration of the group health insurance plans for state employees" with the ETF Secretary's assistance. (*Id.* at ¶ 21.) Boyden alleges that Dean discriminated against her on the basis of sex by denying coverage for gender dysphoria treatment in violation of Title VII. Particularly material to the present motion, Boyden claims that Dean is an agent of her employer and, as such, can be held liable under Title VII.

---

[1] In resolving a motion to dismiss under Rule 12(b)(6), the court takes all of the factual allegations in the complaint as true and draws all inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007). The focus of the statement of facts in this opinion, therefore, is on plaintiff Boyden alone since the pending motion only concerns her claims against defendant Dean.

## B. Denials of Coverage

In their amended complaint, plaintiffs allege that ETF "determines the requirements for health insurance plans offered to state employees." (*Id.* at ¶ 20.) Moreover, ETF/GIB health insurance plans expressly exclude coverage of "procedures, services, and supplies related to surgery and sex hormones associated with gender reassignment." (*Id.* at ¶ 8.) Boyden participated in the health insurance plans offered by ETF/GIB as a result of her employment. Having chosen health insurance coverage through Dean, it was responsible for administering her health plan.

On or around May 17, 2016, Boyden requested pre-approval from Dean for surgical treatment for her gender dysphoria or Gender Conformation Surgery ("GCS").[2] Boyden's primary care physician wrote a letter supporting her request, recommending GCS as "the best way for her to keep her testosterone levels at goal." (*Id.* at ¶ 47.) On May 20, 2016, Dean denied the request. Boyden then initiated a grievance with Dean, requesting reconsideration of its denial of coverage. Dean upheld the denial on July 8, 2016, citing the ETF/GIB health insurance plan's unambiguous exclusion of GCS coverage.

About one week later, ETF/GIB amended their health insurance plans to provide coverage for transition-related care effective January of 2017. This amendment prompted Boyden to make a second request for pre-approval from Dean for GCS. Dean denied this request as well, stating that coverage for this service would not begin until January of 2017.

On December 30, 2016, however, GIB again "took action," this time to *reinstate* the

---

[2] *See generally* "Sex reassignment surgery," Wikipedia, https://en.wikipedia.org/wiki/Sex_reassignment_surgery

3

exclusion of coverage for gender transition treatments as soon as four contingencies were met. (*Id.* at ¶ 39.) This action was apparently prompted by an August 2016 directive from the Wisconsin Department of Justice opining that GIB should reinstate the transition-related care exclusion, because the change in coverage was based on a misreading of the law and that denial of coverage for transition-related care is not discriminatory because such treatment "is never medically necessary." (*Id.* at ¶ 38.)

As instructed, on January 3, 2017, Boyden's healthcare provider submitted a request to Dean for pre-approval for Boyden's GCS. In a letter dated January 10, 2017, Dean denied this third request. Boyden then initiated a grievance and also requested the medical professionals she was seeing to seek peer-to-peer reviews of Dean's decisions. In the interim, GIB found that the four contingencies were met on January 30, 2017, and reinstated the exclusion effective February 1, 2017. Boyden met in person with Dean representatives on February 15, 2017, to discuss her grievance. In a letter dated February 21, 2017, Dean again upheld its denial, citing the reinstatement of the exclusion and an external review conducted by a Board Certified Plastic Surgeon.

Boyden's healthcare providers have referred her to a surgeon for medically necessary GCS, but because she does not have sufficient funds to pay for the procedure out-of-pocket, she has not yet undergone the surgery. Boyden received Notice of Right to Sue UW-Madison, ETF/GIB and Dean on April 27, 2017.

OPINION

Plaintiffs allege claims against various state entities and their agents, as well as their employers-in-fact and officials of those employers for sex discrimination in violation of

4

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, sex and transgender status discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, U.S. Const. amend. XIV, § 1, and sex discrimination in violation of the Patient Protection and Affordable Care Act § 1557, 42 U.S.C. § 18116. Here, Dean moves to dismiss plaintiff's claim asserted against it under Title VII on the basis that it is neither plaintiff's employer as defined in 42 U.S.C. § 2000e(b), nor an agent of plaintiff's employer. Because Dean was never plaintiff's employer-in-fact, the parties agree that this motion turns solely on whether Dean was acting as an agent of plaintiff's employer.

This court addressed a similar question in *Klassy v. Physicians Plus Insurance Company*, 276 F. Supp. 2d 952 (W.D. Wis. 2003), holding that defendant Physicians Plus was not plaintiffs' employer within the meaning of Title VII. *Id.* at 959. In *Klassy*, plaintiffs Jim and Barbra Klassy were Jehovah's Witnesses who believed that the Bible prevented them from receiving blood transfusions. *Id.* at 954. Jim Klassy was employed by the Renschler Corporation, and he received health insurance administered by Physicians Plus as part of his employment.[3] *Id.* Barbra Klassy was covered by Jim Klassy's health insurance and needed follow-up treatment for her previous hip replacement surgery. *Id.* at 955. Despite no doctor within Physicians Plus's network being able to perform the surgery in accordance with Barbra Klassy's religious beliefs, Physicians Plus refused to pay for her out-of-network surgery. *Id.* In response, the Klassys initiated a lawsuit against Physicians Plus under Title

---

[3] At that time, Physicians Plus was an integrated health care delivery system throughout Wisconsin that provides managed care services to its plan participants. *Klassy*, 276 F. Supp. 2d 952.

5

VII. *Id.* at 953.

In finding no employment or agency relationship, this court found no evidence that Physicians Plus "exist[ed] solely for the purpose of enabling" the Renschler Corporation to delegate its responsibility to provide health insurance to its employees, nor evidence that employees were required to participate in the Physicians Plus program, distinguishing the situation from that in *Spirt v. Teachers Insurance & Annuity Association*, 691 F.2d 1054 (2d Cir. 1982), *vacated on other grounds by* 463 U.S. 1223 (1983).[4] *Klassy*, 275 F. Supp. 2d at 959. Instead, this court relied on the Fifth Circuit's decision in *Deal v. State Farm County Mutual Insurance Company of Texas*, 5 F.3d 117, 119 n.3 (5th Cir. 1993), and the Sixth Circuit's decision in *Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 996 (6th Cir. 1997), both holding that to be an "agent" under Title VII, one must be empowered with respect to employment practices, like the right to hire and fire, supervise work, set schedules, pay salary, withhold taxes, or provide benefits. *Klassy*, 276 F. Supp. 2d at 960.

The allegations in *Klassy* are comparable to those in the present case. Plaintiff has not alleged that Dean existed solely to allow the University of Wisconsin-Madison and the Board of Regents of the University of Wisconsin System to delegate their responsibility to provide health insurance to their employees, nor has plaintiff alleged that she was required to participate in one of the health insurance plans. On the contrary, just as plaintiff Andrews apparently chose coverage through a different insurance provider offered by

---

[4] When *Klassy* was decided, it was unclear whether *Spirt* remained binding precedent in the Second Circuit. *See Scaglione v. Chappaqua Cent. Sch. Dist.*, 209 F. Supp. 2d 311, 315 n.5 (S.D.N.Y. 2002) (addressing the discrepancies between *Spirt* and the Second Circuit's more recent decisions and calling *Spirt*'s validity into question).

ETF/GIB, plaintiff Boyden chose among plans offered through Dean. Moreover, plaintiff acknowledges in the complaint that ETF and GIB "set the terms of Wisconsin state employees' health insurance." (Am. Compl. (dkt. #27) ¶ 8.) Because Dean is only responsible for administering its health plans according to these dictated terms, Dean is not an agent of plaintiff's employer with respect to employment practices, but rather a provider or vendor of services. *See Klassy*, 276 F. Supp. 2d at 960 (citing *Deal*, 5 F.3d at 119, for proposition that Title VII requires agency "with respect to *employment practices* such as right to hire and fire, supervise work, set schedules, pay salary, withhold taxes or provide benefits") (emphasis in *Klassy*). If anything, an agency relationship exists between plaintiff's employers and ETF/GIB, as the factual allegations suggest that plaintiff's employers delegated to ETF/GIB the responsibility to determine which services should be covered under all of the offered health insurance plans.

Plaintiff nevertheless argues that the outcome in *Klassy* would have been different had the case been decided after the Seventh Circuit's decision in *Alam v. Miller Brewing Company*, 709 F.3d 662 (7th Cir. 2013). In particular, plaintiff notes that the Seventh Circuit "cited favorably" in *Alam* to the Second Circuit's decision in *Spirt* and the First Circuit's decision in *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994). In *Alam*, however, the Seventh Circuit was responding to the plaintiff's reliance on *Spirt* and *Carparts*, and the court simply explained that those cases "stand for the proposition that Title VII plaintiffs may maintain a suit directly against an entity acting as the agent of an employer . . . but only under certain circumstances." *Alam*, 709 F.3d at 668-69. More specifically, the court explained that

7

those cases:

> recognize agency liability [1] where the agent "exercises control of an important aspect of [plaintiff's] employment,'" *Carparts*, 37 F.3d at 17 (citation omitted), [2] where the agent "significantly affects access of any individual to employment opportunities," *Spirt*, 691 F.2d at 1063 (citation omitted), or [3] where "an employer delegates sufficient control of some traditional rights over employees to a third party," [*Nealey v. Univ. Health Servs.*, 114 F. Supp. 2d 1358, 1376 (S.D. Ga. 2000)] (citation omitted).

*Alam*, 709 F.3d at 669. While the Seventh Circuit acknowledged the *possibility* that a plaintiff could maintain a Title VII lawsuit against an entity acting as an agent of plaintiff's employer under these three circumstances, none are applicable here.

For example, in *Spirt*, the Second Circuit relied upon three facts to conclude that Teachers Insurance and Annuity Association (TIAA) and College Retirement Equities Fund (CREF) could be held liable under Title VII. *Spirt*, 691 F.2d at 1063. First, TIAA and CREF existed solely so that universities, like plaintiff's employer, could delegate their responsibility to provide retirement benefits to their employees. *Id.* Second, plaintiff's participation in the TIAA and CREF program was mandatory. *Id.* Third, plaintiff's employer shared in the administrative responsibilities resulting from its employees' participation in the TIAA and CREF program. *Id.* These facts, when taken together, supported the conclusion that TIAA and CREF were "so closely intertwined with" plaintiff's employer that they could be deemed agents of the employer for purposes of Title VII. *Id.* Here, plaintiff has failed to allege *any* facts that would support this conclusion. Indeed, the allegations in her complaint lead to the contrary inference that Dean did *not* control employment practices.

*Carparts* is similarly distinguishable. In that decision, the First Circuit declined to hold whether Automotive Wholesalers Association of New England, Inc. (AWANE) could be found liable under Title VII, but rather allowed the case to proceed premised on that possibility. *Carparts*, 37 F.3d at 17. The court did so based on the allegation that plaintiff's employer had in fact delegated its responsibility to provide health insurance for its employees to AWANE *and* the allegation that AWANE had the authority to determine which benefits to provide to employees. *See id.* at 14, 17. In the present case, plaintiff again alleges no such facts. In particular, plaintiff does not allege that her employer delegated its responsibility to provide health insurance for its employees to Dean, and even if that might be inferred, plaintiff's Amended Complaint acknowledges that Dean had no authority to determine whether gender transition treatment benefits would be offered to employees through the ETF/GIB health insurance plan.[5]

Even so, plaintiff argues that this court should apply the following, arguably broader language in the *Carparts* decision:

> [E]ven if the defendants did not have authority to determine the level of benefits, and even if Carparts retained the right to control the manner in which the Plan [offered by AWANE] administered these benefits, defendants would still be rendered "employers" of [plaintiff] if defendants are "agents" of a "covered entity," who act on behalf of the entity in the matter of providing and administering employee health benefits.

*Id.* at 17. While the intended application of this language is unclear, its broad application would seem to undermine the very test that the First Circuit established earlier in its

---

[5] The lone, even arguable exception to this is a one month window between January 1 and February 1, 2017, that is addressed later in this opinion, though even then it was not *Dean* who made the change in coverage (and then reverted back again), but rather ETF/GIB who did so.

9

*Carparts* decision, limiting an agency relationship to instances where the alleged agent controls employment decisions. Indeed, if applied literally, this language would suggest that any person or entity that offered or administered health insurance plans would be an agent of an employer, who could be held liable under Title VII without regard to their control over coverage decision. If nothing else, this would seem a wholly unnecessary expansion of Title VII liability.[6] Consistent with *Klassy*, offering or administering employee health plans is not enough by itself to make Dean an agent of plaintiff's employer under Title VII.[7]

Finally, in her response to Dean's motion to dismiss (dkt. #40), plaintiff suggests that if not an agent generally, there was at least a brief window of one month where Dean *could* have approved her request for coverage because her ETF/GIB health insurance plan provided for the coverage, and Dean's failure to do so violated Title VII. (*Id.* at 6-7.) As an initial matter, plaintiff failed to plead these allegations in her amended complaint, which typically forecloses its consideration by the court. *See Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) ("[A] plaintiff may not amend his complaint through arguments in his

---

[6] While the court rejects a reading of *Carparts* that effectively holds an insurer is *always* an agent of the employer, the court similarly declines Dean's request to follow the holding in *Baker v. Aetna Life Ins. Co.*, No. 3:15-CV-3679-D, 2017 WL 131658 (N.D. Tex. Jan. 13, 2017), establishing a bright line rule that an insurance provider can *never* be held liable under Title VII as the agent of an employer. The court is only holding that where a health insurance provider is merely following an unambiguous health care exclusion dictated by the employer (or its agent), then the insurer is not acting as an agent within the meaning of Title VII.

[7] The third case cited by the *Alam* court is also distinguishable. In *Nealey,* the plaintiff's employer considered by the Southern District Court in Georgia contracted to a third party, then delegated to this third party the authority to manage day-to-day administrative operations. 114 F. Supp. 2d at 1368. With respect to defendant Dean, plaintiff again alleges no such facts. More importantly, there is no such allegation with respect to Dean's decision-making authority with respect to administrative gender dysphoria treatments.

10

brief in opposition to a motion for summary judgment."). Even if this new theory were properly raised, however, it does not alter the court's analysis. While perhaps Boyden would have a claim under ERISA for denial of coverage during this brief period of time, any authority of Dean to approve her request was mooted by GIB's reversal of coverage. Indeed, since GIB had already indicated its intent to reverse a grant of coverage in late December 2016, before the one month window opened on January 1, 2017, Dean arguably never had any meaningful discretion in any event.

In the end, Title VII is not the proper vehicle for plaintiff to bring a claim against Dean. As explained in *Klassy*, to hold otherwise would necessarily mean that Dean and all other health providers would be deemed at least an agent for every employer who contracted to provide healthcare plans to its employees, even though they have *no* discretion as to the scope of health benefits covered. It is doubtful that Congress intended to impose such wide-ranging liability on insurance companies under Title VII, and absent clear statutory language to the contrary, this court is disinclined to reach a different conclusion than it did more than a decade ago in *Klassy*.

ORDER

IT IS ORDERED that defendant Dean Health Plan, Inc.'s motion to dismiss (dkt. #30) is GRANTED, and plaintiff's Title VII claim asserted against Dean is dismissed with prejudice. Since this is also the only basis of liability asserted against Dean, it is also DISMISSED as a defendant.

Entered this 20th day of November, 2017.

BY THE COURT:


/s/
_____
WILLIAM M. CONLEY
District Judge