IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ALINA BOYDEN and SHANNON ANDREWS,

                Plaintiffs,

v.

ROBERT J. CONLIN, STATE OF WISCONSIN
DEPARTMENT OF EMPLOYEE TRUST
FUNDS, STATE OF WISCONSIN GROUP
INSURANCE BOARD, MICHAEL S. FARRELL,
STACEY ROLSON, CHARLES GRAPENTINE,
WAYLON HURBURT, THEODORE NIETZKE,
J.P. WIESKE, BOB ZIEGELBAUER, JENNIFER
STEGALL, FRANCIS SULLIVAN, HERSCHEL
DAY, and NANCY THOMPSON,

                Defendants.

OPINION AND ORDER

17-cv-264-wmc

---

This case is set for a jury trial on damages, commencing October 9, 2018. In advance of the final pretrial conference, scheduled for September 25, 2018, the court issues the following opinion and order on the parties' respective motions in limine and related motions.

OPINION

I. Plaintiffs' Motions

    A. **MIL to Exclude Evidence or Testimony from Dr. Lawrence S. Mayer (dkt. #169)**

In light of the court's finding of liability in favor of plaintiffs on their Equal Protection claim, Dr. Mayer's testimony would no longer appear relevant at trial on plaintiffs' damages claim. Therefore, this motion is DENIED AS MOOT.[1]

---

[1] To the extent this understanding is incorrect, and defendants do intend to call Dr. Mayer to

### B. MIL to Exclude Evidence or Testimony from David V. Williams (dkt. #173)

In light of the court's finding of liability in favor of plaintiffs on their Equal Protection claim, Williams' testimony similarly appears to have no relevance at trial on plaintiffs' damages claim. Therefore, this motion is DENIED AS MOOT.

### C. Motion for Attorney Conducted Voir Dire (dkt. #167)

Plaintiffs seek leave for their counsel to conduct "no more than 15 minutes of non-repetitive examination of prospective jurors." (Pls.' Mot. (dkt. #167) 1-2.) In support of their motion, plaintiffs point to Federal Rule of Civil Procedure 47(a), which provides that the court "may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination." While defendants did not file an opposition, the court is still strongly disinclined to grant this motion.

The court has invited questions from the parties as part of their pretrial filings, incorporated those questions or similar ones into a draft set of questions, and then will seek input from the parties as part of the final pretrial conference. During voir dire, the parties are also invited at side bar to suggest follow-up questions with particular juror members. While the court is cognizant that this case touches on sensitive, politically charged topics, this is not uncommon, with other recent trials concerning race discrimination, excessive use of force by police officers and other sensitive topics. Moreover, plaintiffs have not offered any reasons why the court should depart from its

---

testify, defendants should clarify that intent at the final pretrial conference and explain the relevance of any proposed testimony, and the court will reconsider this motion. This is true for all of the motions that the court has deemed mooted by the court's summary judgment opinion, including the exclusion of testimony of plaintiffs' expert witnesses.

2

typical practice.  As such, the motion is DENIED, but plaintiffs and defendants are free, as always, to provide input on the questions to be posed to prospective jurors and to ask the court for follow-up questions where appropriate.

## II. Defendants' Motions

Defendants brings four motions in limine challenging the scope of plaintiffs' damages claims.  As a backdrop for all, defendants point to the requirement that any finding of injury, as required for an award of compensatory damages, must be based, in turn, on a finding of causation, namely that the violation here -- the exclusion discriminated against plaintiffs based on their sex -- caused the alleged injury, rather than some intervening cause.  (Defs.' Mot. (dkt. #187) 3-4.)

### A. MIL 1: Exclude Damages Evidence Related to Shannon Andrews' Facial Feminization Surgical Procedures (dkt. #187)

In the first motion, defendants seek exclusion of any damages theory related to Shannon Andrews' denial of coverage for facial feminization procedures, arguing that the denial of coverage was independent of the Exclusion.  Specifically, defendants contend that Andrews' third-party health insurer, WPS Health Insurance, "categorically does not provide coverage for facial feminization procedures."  (Defs.' Mot. (dkt. #187) 5 (citing WPS's treatment for gender dysphoria coverage policy).)

In response, plaintiffs contend that the third-party coverage policy does not bar Andrews' claim for damages based on her February 2018 facial feminization surgery because: (1) she was not enrolled in WPS when she received her surgery; and (2) the third-party insurer's coverage policies are irrelevant since the only document that provides

3

criteria for coverage for state employees is the Uniform Benefits. (Pls.' Opp'n (dkt. #198) 3 (citing Fairweather Decl., Exs. A, B (dkt. ##199-1, 199-2)).)

The court's understanding of the interplay between the Uniform Benefits and a third-party insurer's own coverage policies is not entirely clear -- and may warrant additional explanation from the parties -- but the fact that as of January 1, 2018, WPS was no longer participating in the Group Health Insurance Program, and, therefore, was not Andrews' insurer appears to undermine defendants' basis for excluding this theory of damages. As such, this motion is DENIED, but without prejudice to defendants providing further clarification about the status of WPS as a third-party insurer at the time of Andrews' surgery and, in particular, if there is a basis to dispute plaintiffs' representations.

### B. MIL 2: Exclude Damages Evidence Related to Shannon Andrews' Distress Before She Began Employment Covered by Uniform Benefits (dkt. #187)

Next, defendants seek to exclude any damages theory based on distress plaintiff Shannon Andrews may have experienced before being covered by the Uniform Benefits as a state employee. This motion is based on plaintiffs' responses to defendants' interrogatories, in which Andrews stated that "she first took steps to receive GCS is 2012 and then discovered the coverage exclusion, which made it harder to find a therapist to treat her dysphoria because there were no in-network resources to do so, which in turn delayed her GCS." (Defs.' Mot. (dkt. #187) 7 (citing Roth Decl., Ex. A (dkt. #189-1) 4).) Defendant point out, however, that Andrews did not begin her employment with the University of Wisconsin until 2014, and therefore any damages based on emotional

4

distress between 2012 and 2014 was not caused by the Exclusion of coverage.[2]

In their response, plaintiffs concede that "prior emotional distress cannot provide the basis for Plaintiffs' damages as there is no causal connection between it and the coverage exclusion," plaintiffs nonetheless argue that the "evidence related to the prior distress contextualizes, and is inseparable from, the emotional distress caused by the coverage exclusion." (Pls.' Opp'n (dkt. #198) 4-5.)

Up to a point, the court agrees with plaintiffs that Andrews' testimony about her gender dysphoria and early attempts to receive GCS, which predate her employment with the State, may be relevant to provide context for the jury's consideration of the claimed impact of the Exclusion's application. Nonetheless, if Andrews offers testimony dating back to her experience in 2012 and 2013, it would be presented as such, without dwelling on the specific hurtful acts of others predating her employment by the State. In addition, the court will consider an appropriate instruction to the jury that past acts of discrimination as to be considered for context only, that defendants are not responsible for past acts by third-parties, and that any award of damages is limited solely to the time period during which plaintiffs were state employees and subject to the Exclusion. As such, the motion is GRANTED IN PART AND DENIED IN PART.

---

[2] Plaintiffs do not respond directly to defendants' representation that Andrews began her employment with the University of Wisconsin until 2014, though in response to another motion in limine, plaintiffs represent that "Andrews as employed by the Board of Regents that University of Wisconsin in 2012." (Pls.' Opp'n (dkt. #198) 6.) The parties can clarify that timeline during trial.

5

### C. MIL 3: Exclude Damages Evidence Related to Shannon Andrews' Distress Over the Exclusion's Prior Wording (dkt. #187)

Defendants also challenge any damages theory based on Andrews' distress over the prior wording of the Exclusion, which denied coverage for "sexual transformation," rather than the current language excluding from coverage procedures and services associated with "gender reassignment." Defendants argue that this theory of damages does not fall within the scope of plaintiffs' claim that she was discriminated against in violation of Title VII and the ACA because of the Exclusion. Defendants also point out that Andrews was not working for the University of Wisconsin during the time the prior language of the Exclusion was in effect.

Putting aside the apparent dispute as to the start date of Andrews' employment, the court agrees with defendants that any distress caused by the prior language of the Exclusion is too remote from the sex discrimination claim she has alleged in this case, even as context. Moreover, the court did not find that plaintiffs were discriminated against because the prior exclusion was framed in terms of "sexual transformation," rather than "gender reassignment." Accordingly, this motion is GRANTED.

### D. MIL 4: Exclude Damages Evidence Related to Alina Boyden's Distress Before She Began Employed Covered by the Uniform Benefits (dkt. #187)

In defendants' final motion in limine bearing on plaintiffs' damages, defendants seek to exclude any evidence of distress Boyden suffered before her coverage in the Uniform Benefits in May 2015. For the reasons as described above with respect to Andrews, the court will allow such evidence as important context subject to the same caveats and possible limiting jury instruction. As such, this motion is GRANTED IN PART AND DENIED IN

PART.

E. **MIL 5: Exclude Testimony by Dr. Budge Regarding the Costs to Insurance Plans of Covering Transition-Related Care for Transgender Individuals (dkt. #178)**[3]

In light of the court's finding of liability in favor of plaintiffs on their Equal Protection claim, the court sees no relevance to Budge's testimony as to the costs of insuring transition-related care at a trial on damages. Therefore, this motion is DENIED AS MOOT.

F. **MIL 6: Exclude Testimony Offered by Dr. Schechter Regarding the Medical Efficacy of Surgical Treatments on Patients Suffering from Gender Dysphoria (dkt. #178)**

In light of the court's finding of liability in favor of plaintiffs on their Equal Protection claim, the court similarly sees no relevance to Schechter's testimony as to the efficacy of surgical treatment at a trial on damages. Therefore, this motion is DENIED AS MOOT.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for attorney-conducted voir dire (dkt. #167) is DENIED.

2) Plaintiffs' motions in limine (dkt. ##169, 173) are DENIED AS MOOT.

---

[3] Defendants filed two separate motion in limine documents, the first covering Motions in Limine No. 1-4 and the second covering Motions in Limine Nos. 4-5. (Dkt. ##178, 187.) Given the overlap in numbers, the court has renumbered the second MIL No. 4 as No. 5, and MIL No. 5 as No. 6.

3) Defendants' motions in limine nos. 1-4 (dkt. #187) are GRANTED IN PART AND DENIED IN PART as set forth above.

4) Defendant's motions in limine nos. 5-6 (dkt. #178) are DENIED AS MOOT.

Entered this 24th day of September, 2018.

                BY THE COURT:

                /s/
                _____
                WILLIAM M. CONLEY
                District Judge